UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SECURITIES AND EXCHANGE COMMISSION

v.

PRINCETON ALTERNATIVE FUNDING, LLC, MICROBILT CORPORATION, PHILIP N. BURGESS, JR., WALTER WOJCIECHOWSKI, and JOHN COOK, JR.

Case No. 1:23-cv-00841-JRR

# JOE KENARY'S MEMORANDUM IN SUPPORT OF HIS RESPONSE TO DEFENDANTS' MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY DOCUMENT SUBPOENA

Respondent, Joe Kenary, a nonparty to the underlying litigation between the SEC and Movants, files his Response to Defendants' Motion to Compel Compliance by Joe Kenary with Third-Party Document Subpoena (doc. 1).

## INTRODUCTION AND SUMMARY

Movants put together a wish list of documents and apparently filled their heads with visions of terabytes of evidence being produced by Mr. Kenary. When Mr. Kenary's response failed to live up to those expectations, Movants had a decision to make – accept disappointment or accuse Mr. Kenary of wrongdoing. Movants chose the latter.

Without any actual proof of wrongdoing, Movants ask the Court to *assume* that Mr. Kenary *must* be improperly withholding responsive documents. He is not. As Mr. Kenary's counsel has repeatedly told Movants, Mr. Kenary conducted a diligent search for responsive documents, not once but twice, and determined that he is not in possession of any documents responsive to Movants' subpoena. Movants have offered no evidence to the contrary. Mr. Kenary cannot

produce what does not exist or he does not have. Thus, the Court should deny Movants' motion to compel and award Mr. Kenary his fees.

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Mr. Kenary's role with RDL Realisation PLC and its investments in Princeton.**

Since approximately February 2019, Mr. Kenary has been serving as an Executive Director of RDL Realisation PLC ("***RDL***"). RDL, formerly known as Ranger Direct Lending Fund PLC, was a UK-listed peer-to-peer loan fund that invested with a number of companies, including:

- FreedomPlus, which provides consumer loans targeting emerging-prime borrowers;

- IFG, which provides loans against specific invoices rather than a credit line based upon a borrower's receivables;

- Blue Bridge, which provides equipment financing loans;

- Biz2Credit, which focuses on inventory, credit card, receivables, equipment and real-estate backed financing transactions and loans;

- Sharestates, which provides private real estate lending focusing on non-owner occupied residential and commercial projects;

- Peerform, an online lending platform that offered peer-to-peer personal loans;

- AmeriMerchant, which provides small business alternative lending through loans and merchant cash advances;

- Swift Financial, which offers cash flow recovery solutions for the fitness industry; and

- one of the movants in this case, Princeton Alternative Funding, LLC ("***PAF***"), which offered lines of credit to finance companies that offer short term loans in the non-prime and alternative market.

During the relevant time period for purposes of the underlying litigation, Ranger Alternative Management II, LP ("***RAM***") managed RDL's investments in the US, including its investments in the companies listed above. RAM is an affiliate of Ranger Capital Group, a holding company that controls a variety of registered investment advisers offering traditional and

alternative investment opportunities to institutional and high net worth individual investors.[1]  Mr. Kenary is not, and never has been, affiliated with RAM or Ranger Capital Group.

The underlying case involves the investments of RDL's domestic affiliate, Ranger Specialty Income Fund, L.P., ("**Ranger Domestic**"), and an offshore affiliate, Ranger Direct Lending Fund Trust ("**Ranger Offshore**"), in Princeton Alternative Income Fund ("**PAIF**") and Princeton Alternative Income Offshore Fund, Ltd. ("**PAIOF**"), a British Virgin Islands company created by certain of the Defendants to facilitate offshore investments in PAIF (i.e., a feeder fund to PAIF).  PAF was formed in August 2014 to serve as the general partner and manager of the Fund.  Mr. Kenary is not, and never has been, affiliated with PAF, PAIF, or PAIOF.

Between March 2015 and February 2016, RAM caused Ranger Domestic to invest $5.75 million in PAIF as a Limited Partner, and between May 2015 and January 2016, RAM caused Ranger Offshore to invest $55.1 million in PAIOF.  The SEC's complaint in the underlying litigation identifies RAM as "Investor R," the largest investor in the Fund.  On or about March 28, 2016, RAM submitted a redemption request to PAF and PAIF for a withdrawal of 100 percent of RAM's invested funds, with the funds to be received in full by October 31, 2016.

On March 9, 2018, PAF filed a voluntary petition for Chapter 11 bankruptcy protection. The Bankruptcy Court appointed a trustee in November 2018, and the Court confirmed a Chapter 11 Plan on March 31, 2020.  The confirmed plan provided for the distribution of cash to RDL of only $13,483,500.  Upon the effective date of the plan, all outstanding litigation related to the Princeton Fund was resolved and RDL obtained a full release of all claims against it by the Princeton Fund, its general partner, MicroBilt and its related entities, and all other investors in the Princeton Fund.  The Bankruptcy Court closed the case on May 11, 2021.

---

[1] https://www.rangercapital.com/

**NONPARTY JOE KENARY'S MEMORANDUM IN SUPPORT
OF HIS RESPONSE TO MOVANTS' MOTION TO COMPEL – PAGE 3**

PAF's bankruptcy in 2018 mortally wounded RDL's portfolio. There were wholesale Board changes in June 2018, and RDL announced that it would enter into a managed wind-down. Late in 2018, RAM resigned as investment manager with an effective date of February 2019. RAM was set to be replaced by Ares Capital Management. However, Ares withdrew over hostilities with another investor, Oaktree Capital Management. Ultimately, when RAM stepped down in or about February 2019, Mr. Kenary was appointed as one of the Executive Directors of RDL. As Executive Director, Mr. Kenary has been serving a team lead for the day-to-day management of the remaining assets in the portfolio, working closely with others to liquidate assets and wind down the fund in a manner that maximizes returns to shareholders.

**B.     Underlying lawsuit by the SEC against Movants.**

According to the SEC's complaint in the underlying litigation, Movants solicited investors to buy limited partnership interests in PAIF from March 2015 through February 2017, by: (1) misrepresenting and actively concealing the role of Movant Burgess, a convicted felon, in the management of PAF; (2) making materially false statements about PAF's and Movant Microbilt's ability to monitor PAIF's investments in real time; (3) making materially false statements about the selection process for PAIF's investments; and (4) making materially false and misleading statements about PAIF's largest investor. The SEC's complaint further alleges that the Movants made false and misleading statements and omissions regarding RAM's request to redeem its investment, including failing to tell other investors that RAM, the largest investor in the Fund, had submitted a redemption request.

### C. Movants' subpoena to Mr. Kenary.

On or about October 18, 2022, Movants served a document subpoena on Mr. Kenary.[2] The Subpoenas seeks four broad categories of documents:

1. Any and all documents and/or communications, from January 1, 2018 to present, by and between Ranger or RDL, its employees or representatives, regarding or relating to any representations made or actual or potential investigation by the SEC into Ranger, RDL or any of their affiliated entities.

2. Any and all documents and/or communications, from January 1, 2018 to present, by and between Ranger or RDL, its employees or representatives, regarding the Defendants in this action connected to the actual or potential SEC investigation by the SEC into Ranger, RDL or any of their affiliated entities.

3. Any and all documents and/or communications, from January 1, 2018 to present, by and between Ranger or RDL, its employees or representatives regarding any wrongdoing by any Defendant(s) in this action connected to the actual or potential SEC investigation by the SEC into Ranger, RDL or any of their affiliated entities.

4. Any and all documents and/or communications concerning the removal of Ranger as manager of RDL's funds.

In short, Requests 1, 2, and 3 request documents regarding the SEC's investigation into Ranger, RDL, or any of their affiliates and Request 4 requests documents relating to the removal of RAM as the investment manager of RDL's funds.

### D. Mr. Kenary conducted numerous diligent searches for responsive documents, but did not locate anything responsive to the subpoenas.

Upon receipt of Movants' subpoena, Mr. Kenary conducted a diligent search for responsive documents. He timely responded to the subpoenas on November 1, 2022, asserted limited objections to the subpoenas, and stated that no responsive items had been located despite a diligent search.[3]

---

[2] Movants' Memo at Exhibit 2 thereto.

[3] Movants' Memo at Exhibit 3 thereto.

Several months later in early January 2023, Movants' counsel and Mr. Kenary's counsel met and conferred several times, during which counsel for Mr. Kenary consistently maintained that Mr. Kenary was not in possession of documents responsive to the subpoena. Unsatisfied with Mr. Kenary's response, Movants' counsel asked if Mr. Kenary would be willing to run searches using certain key words to attempt to locate responsive documents. Then, approximately two weeks later, on January 24, 2023, Movants' counsel proposed that Mr. Kenary run the following search terms across his email accounts to try to locate responsive documents:[4]

- RDL and/or RDL Realisation PLC
- Ranger and/or Ranger Direct Lending
- Philip Burgess
- Philip Burgess within 10 words of investigation and/or SEC
- Corey Schuster
- Brian Privor
- Nim Hacker
- Princeton
- Princeton within 10 words of investigation and/or SEC
- PAF/PAIF/PAIOF
- PAF/PAIF/PAIOF within 10 words of investigation and/or SEC
- MicroBilt within 10 words of investigation and/or SEC
- John/Jack Cook
- Walter/Walt Wojciechowski
- Jessica Neiterman
- London Stock Exchange and/or LSE
- Securities and Exchange Commission and/or SEC
- Investigation within 5 or 10 words of SEC

Movants' counsel also proposed that Mr. Bellah and Mr. Kenary search for any emails to or from the following addresses:[5]

- Philip_burgess@microbilt.com
- schusterc@sec.gov
- privorB@SEC.gov
- nhacker@rangercap.com

---

[4] Movants' Memo at Exhibit 4 thereto.

[5] *Id.*

- jack_cook@princetonalternativefundingmgmt.com
- walt_wojciechowski@microbilt.com
- neitermanj@sec.gov

A couple of days later, on January 26, 2023, Movants' counsel added the following additional terms and email addresses:[6]

- Wes McDowell
- WMcDowell@rangercap.com
- Dana Ousley
- Dousley@rangercap.com
- Timothy D. Katsiff
- KatsiffT@ballardspahr.com
- David J. Margules
- margulesd@ballardspahr.com
- David L. Axelrod
- AxelrodD@ballardspahr.com
- @ballardspahr

**E.  Some of Movants' search terms were problematic, but Mr. Kenary ran a smaller subset of the proposed search terms.**

Many of the search terms proposed by Movants' counsel were problematic, as they would have generated a large number of hits unrelated to any SEC investigation into Ranger, RDL, or any of their affiliates or the removal as RAM as investment manager, as is discussed more fully below. Counsel for Mr. Kenary so advised Movants' counsel on February 7, 2023, and then Mr. Kenary ran a subset of Movants' proposed search terms as follows:[7]

- Philip Burgess
- Philip Burgess within 10 words of investigation and/or SEC
- Corey Schuster
- Brian Privor
- Princeton within 10 words of investigation and/or SEC
- PAF/PAIF/PAIOF within 10 words of investigation and/or SEC
- MicroBilt within 10 words of investigation and/or SEC
- John/Jack Cook

---

[6] Movants' Memo at Exhibit 5 thereto.

[7] Doc. 1-1 at App. 000054-57.

**NONPARTY JOE KENARY'S MEMORANDUM IN SUPPORT
OF HIS RESPONSE TO MOVANTS' MOTION TO COMPEL – PAGE 7**

- Walter/Walt Wojciechowski
- Jessica Neiterman

**F.     The search confirmed (again) that Mr. Kenary is not in possession of documents responsive to Movants' subpoena.**

As before, the search confirmed again that Mr. Kenary is not in possession of any documents responsive to Movants' subpoena. This was not surprising to Mr. Kenary because, as Mr. Kenary's counsel has advised Movants' counsel, Mr. Kenary (i) has had no involvement in any SEC investigation of Ranger, RDL, or any of their affiliates, if any; and (ii) was not involved in the removal of RAM as manager of RDL's funds.

The search performed by Mr. Kenary and the target of a similar subpoena, Steven Bellah, who has been serving as Chief Financial Officer of RDL and has played a role in the managed wind-down, generated a total of seven hits. One was an email transmitting a sealed pleading from the PAF bankruptcy case.[8] An exhibit to the pleading was a letter from King & Spaulding to Corey Schuster and Jessica Neiterman, who were leading the SEC's investigation of Movants. It was picked by a number of the search terms used by Mr. Bellah and Mr. Kenary, but it has nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoena.

Another hit was an email regarding a Plan Support Agreement in the PAF bankruptcy case. Earlier emails in the string included Mr. Schuster and Ms. Neiterman as recipients. It has nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoena.

---

[8] Because the letter was filed as an exhibit in the PAF bankruptcy case, Movants already have it. Mr. Kenary's counsel has identified it to Movants' counsel by Bates number.

The search also picked up two sets of internal emails in which RDL's representatives circulated copies of the SEC's complaint against the Movants. The emails have nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoena.

The last hit was an email from a RDL board member who was sitting on a train in Trenton, New Jersey, at the time. The board member commented that sitting on a train in New Jersey brought back memories of the PAF bankruptcy. It has nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoenas.

**G.    Movants contend that Mr. Kenary <u>must</u> be in possession of responsive documents, but have offered no proof in support of their assumptions.**

Counsel for Mr. Kenary informed Movants' counsel of the results of the search, indicating again that Mr. Bellah is not in possession of responsive documents. Unsatisfied with Mr. Kenary's response, Movants requested a status conference with Magistrate Judge Rukhsanah L. Singh of the United States District Court for the District of New Jersey, where the underlying litigation between the SEC and Movants is pending. After hearing from both sides, which included a discussion of the facts set forth above, Magistrate Judge Singh recognized that she lacked authority to enforce the subpoenas under Rules 37(a)(2) and 45(d)(3), but nevertheless advised counsel for Movants that she would have denied the motion on the record before that Court. For reasons unknown, Movants nevertheless continue to maintain that Mr. Kenary *must* have responsive documents in his possession, custody, or control. Thus, Movants have filed the instant motion to compel.

## ARGUMENT AND AUTHORITIES

**A.  Mr. Kenary does not possess documents responsive to Movants' subpoenas.**

First and foremost, the Court should deny Movants' motion to compel because, as Mr. Kenary has consistently and repeatedly told Movants, Mr. Kenary is not in possession, custody, or control of any documents responsive to Movants' subpoena. Movants have not offered any evidence to the contrary. Instead, they ask the Court to *assume* that Mr. Kenary *must* be in possession of responsive documents given his role with RDL. This unsubstantiated belief is not enough to grant a motion to compel, however. *See Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) ("[t]he notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to compel that would require Ford to go back to square one and begin its document collection efforts anew."); *Margel v. E.G.L. Gem Lab Ltd.,* No. 04-1514, 2008 U.S. Dist. LEXIS 41754, at *8-*9 (S.D.N.Y. May 29, 2008) ("[u]nder ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . ."); *Golden Trade S.r.L. v. Lee Apparel Co.,* 143 F.R.D. 514, 525 n. 7 (S.D.N.Y. 1992) ("[i]n the face of a denial by a party that it has possession, custody or control of documents, the discovering party must make an adequate showing to overcome this assertion"). Mr. Kenary diligently searched his email account – not once, but twice – for documents relating to the SEC's investigation into RAM, RDL, or any of their affiliates, if any, and/or documents relating to removal of RAM as manager of RDL's funds.[9] He did not locate any documents responsive to the subpoena.

---

[9] Movants are now attempting to change the scope of their subpoenas. Whereas the subpoenas called for documents and information relating to any SEC investigation into *Ranger, RDL or their affiliates*, Movants' motion asks the Court to compel production of

Again, the absence of responsive documents was not surprising to Mr. Kenary. He is not aware of any investigation by the SEC into RAM, RDL, or any of their affiliates, if any. To the extent there were discussion within RDL regarding the removal of RAM as investment manager, Mr. Kenary was not a party to any such discussions. Mr. Kenary did not step into his role with RDL until well after RAM was removed as investment manager. Put simply, Mr. Kenary does not have any documents responsive to the subpoena. Counsel for Mr. Kenary has told Movants' counsel this repeatedly. Movants refuse to believe it, but their belief that documents must exist is not enough to grant a motion to compel. *See Ford Motor Co.*, 257 F.R.D. at 428; *Margel*, 2008 U.S. Dist. LEXIS 41754. Thus, the Court should deny Movants' motion to compel.

**B.     Mr. Kenary is not required to run the search terms proposed by Movants.**

Movants seemingly contend that Mr. Kenary failed to comply with his discovery obligations simply because he did not run all of the search terms proposed by Movants. However, courts and commentators have noted that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." The Sedona Conference, *The Sedona Principles: Second Edition, Best Practices Recommendations & Principles for Addressing Electronic Document Production*, at ii princ. 6 (2007);[10] *see also Ford Motor Co.*, 257 F.R.D. at 428 ("absent an

---

documents concerning *Movants*, the SEC's investigation of *Movants,* and the underlying litigation against *Movants*. Even if the subpoenas had requested documents relating to any SEC investigation into Movants, however, responsive documents would have been picked up by the following search terms proposed by Movants and used by Mr. Bellah and Mr. Kenary:

- Princeton within 10 words of investigation and/or SEC
- PAF/PAIF/PAIOF within 10 words of investigation and/or SEC
- MicroBilt within 10 words of investigation and/or SEC

[10] http://www.thesedonaconference.org

agreement between the parties or a timely objection, the producing party is in the best position to determine the method by which it will collect responsive documents"). The responding party is entitled to select the search terms to be used to locate potentially responsive documents. "Unless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or, as here, designating custodians." *Mortg. Resolution Servicing v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2017 U.S. Dist. LEXIS 78217, at *7 (S.D.N.Y. May 18, 2017).

Many of the search terms proposed by Movants were problematic, as they would have generated a large number of hits completely unrelated to any SEC investigation into Ranger, RDL, or any of their affiliates or the removal as RAM as investment manager. As examples, searches for RDL, RDL Realisation PLC, Ranger, and Ranger Direct Lending would have encompassed the entirety of Mr. Kenary's relationship with the companies, including communications with the Board and third parties covering all aspects of RDL's business. Likewise, searches for names and email addresses of people connected with RAM, including Nim Hacker, Wes McDowell, and Dana Ousley, would have generated a similar number of false positives. As would be expected during the transition of an investment manager, Mr. Kenary had many communications with representatives of RAM to learn about the 12 portfolios in which RAM had caused RDL to invest and to map out a strategy to liquidate those investments in a manner to maximize returns to RDL's investors. Mr. Kenary's communications with RAM involved not only RDL's investments in PAIF and PAIOF, but the other companies listed above as well. Thus, the search terms proposed by Movants would result in unrelated documents pertaining to RDL's day-to-day activities, investments that are wholly unrelated to PAIF and PAIOF, and other unrelated information.

By contrast, the search terms employed by Mr. Kenary and Mr. Bellah were reasonably tailored to locate documents responsive to Movants' subpoenas. Movants have not shown that the search terms were manifestly unreasonable. They have not provided the Court with any evidence to suggest that the additional terms Movants' proposed would generate responsive documents regarding the SEC's investigation into RAM, RDL, or any of their affiliates, if any, and/or the removal of RAM as manager of RDL's funds. Thus, for this reason too, the Court should deny Movants' motion to compel.

**C.   The Court should decline to transfer the motion to New Jersey.**

The court should also deny Movants request to transfer the pending motion to compel to the United States District Court for the District of New Jersey. A party to litigation may subpoena documents of a nonparty pursuant to Federal Rule of Civil Procedure 45, and the subpoena shall issue from the district where the action is pending. Fed. R. Civ. P. 45(a)(2). However, when the nonparty refuses to comply, the consequent motions are handled in the district where compliance is required. Fed. R Civ. P. 45(d)(3)(A). That court may, in turn, transfer that motion to the court that issued the subpoena "if the person subject to the subpoena consents or if the court finds exceptional circumstances." Fed. R. Civ. P. 45(f).

The rule does not define what is meant by "exceptional circumstances," but the Advisory Committee notes discuss that transfer may be warranted to "avoid disrupting the issuing court's management of the underlying litigation," or where interests in the orderly management of the underlying matter "outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45(f) advisory comm. notes, 2013 amend., subdiv. (f). The "prime concern," however, "should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court [i.e., the court where the underlying action is pending] is in a superior position to resolve subpoena-related motions." *Id.*

In support of their request to transfer this motion to New Jersey, Movants contend that Magistrate Judge Singh is in the best position to rule on the pending motion to compel because the underlying suit is a complex case involving numerous witness and documents and there are a number of other discovery motions pending in that Court. However, "mere assertions 'that the underlying action is 'fairly complex' and that the issuing court 'ha[s] greater familiarity with the underlying action' are insufficient to establish 'exceptional circumstances warranting a Rule 45(f) transfer.'" *CMB Expert, LLC v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 U.S. Dist. LEXIS 72029, 2014 WL 2197840, at *2 (N.D. Tex. May 27, 2014)).

Movants have not identified any ruling by Magistrate Judge Singh that would support a finding that this Court's ruling would actually interfere with the management of the underlying suit. Given that the Court's prime concern is "avoiding burdens on local nonparties subject to subpoenas," the Court must not assume that Magistrate Judge Singh is in a superior position to rule on the motion to compel based on Movants' mere speculation that a more expeditious ruling is possible in her court. Movants failed to satisfy their burden of proving that exceptional circumstances exist. Thus, the Court should deny their request to transfer this motion to compel to the issuing court.

WHEREFORE, PREMISES CONSIDERED, Mr. Kenary respectfully requests this Court to deny Movants' motion to compel, to award Mr. Kenary his fees incurred in responding to the motion, and to grant Mr. Kenary such other and further relief to which he may be justly entitled.

Dated: May 1, 2023.

Respectfully submitted,

/s/ Creighton R. Magid
Creighton R. Magid #15488
DORSEY & WHITNEY LLP
1401 New York Avenue, N.W., Suite 900
Washington, D.C. 20005
Telephone: (202) 442-3555
Fax: (202) 442-3199
magid.chip@dorsey.com

**ATTORNEY FOR NONPARTY
JOE KENARY**

Of Counsel:

J. Brian Vanderwoude
DORSEY & WHITNEY LLP
200 Crescent Court, Suite 1600
Dallas, Texas 75201
Telephone: (214) 981-9900
Fax: (214) 981-9901
vanderwoude.brian@dorsey.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 1, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Creighton R. Magid
Creighton R. Magid