## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PRINCETON ALTERNATIVE FUNDING, LLC, MICROBILT CORPORATION, PHILIP N. BURGESS, WALTER WOJCIECHOWSKI, and JOHN COOK, JR.,<br><br>Defendants. | Civil Action No. 1:23-cv-00841-JRR<br><br>Judge Hon. Beth P. Gesner<br><br>Case in other Federal Court:<br><br>District of New Jersey<br>3:21-cv-12971-ZNQ-RL |

## THIRD JOINT STATUS REPORT
## REGARDING DEFENDANTS' MOTION TO COMPEL
## COMPLIANCE WITH THIRD PARTY DOCUMENT SUBPOENA

Defendants Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr. ("Movants") and Joseph Kenary ("Respondent") (together, Movants and Respondent, the "Parties"), through their respective counsel, pursuant to this Court's Order, dated August 21, 2023 (ECF No. 17), hereby submit this Third Joint Status Report regarding Defendants' Motion to Compel Compliance With Third Party Subpoena (the "Motion") (ECF No. 1).

As this Court was advised in the Parties' filed Joint Status Report (ECF No. 16), Magistrate Judge Cureton of the United States District Court for the Northern District of Texas, who is presiding over a parallel miscellaneous matter involving Respondent Steven Bellah ("Bellah") venued in the Northern District of Texas (Fort Worth division), Civil Docket 1:23-cv-00841-JRR (the "Bellah Litigation"), issued an order, dated August 9, 2023 (ECF No. 12) (the "Texas Order"), which is attached hereto as **Exhibit 1**. The Texas Order granted Movants' Motion to Compel that was identical to the Motion to Compel filed in this litigation.

On August 23, 2023, Bellah filed a Rule 72(a) Objection (Bellah Litigation, ECF No. 13) to the Order which is attached hereto as **Exhibit 2** (the "Rule 72 Objection"). Thereafter, on August 30, 2023, the parties met and conferred telephonically but did not resolve the issues. As a result, Movants filed their Response (Bellah Litigation, ECF No. 14) to the Objection which is attached hereto as **Exhibit 3** (the "Response"). The parties at the moment are waiting for the District Court to rule upon the Rule 72 Objection and Response.

For the above reasons, and because of the similarities between this litigation and the Bellah Litigation, and in light of the parties' respective filings in the Bellah Litigation still to be ruled upon by the Bellah District Court, counsel for the Parties suggest that this Court schedule the submission of a new status report by November 3, 2023, or, within 7 days of a ruling on the Rule 72 Objection and Response in the Bellah Litigation, whichever occurs first.

**Defendants,**
**By Their Attorney,**

*/s/ Jeffrey S. Jacobovitz*
Jeffrey S. Jacobovitz, Esquire
Maryland Bar No. 8802040010
**ARNALL GOLDEN GREGORY LLP**
2100 Pennsylvania Avenue NW, Suite 350S
Washington, DC 20037
jeffrey.jacobovitz@agg.com

**Of Counsel (to be admitted *pro hac vice*):**

**KROVATIN NAU LLC**
Gerald Krovatin, Esquire
(NJ Attorney No. 024351977)
60 Park Place, Suite 1100
Newark, New Jersey 07102
gkrovatin@krovatin.com

**MCCABE LAW GROUP, LLC**
Gerard M. McCabe, Esquire
(PA Attorney No. 66564)
42 Hawkswell Circle
Oreland, PA 19075
gmccabe@mccabe.law

Dated: September 11, 2023

# **EXHIBIT 1**

Texas Order Granting Motion to Compel

(dated August 9, 2023)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION, | § | |
|     Plaintiff, | § | |
| | § | MISC. ACTION NO. 4:23-MC-5-P |
| v. | § | |
| | § | *Civil Action No.*3:21-CV-12971-ZNQ-RLS |
| | § | *District Court for the District of New Jersey* |
| PRINCETON ALTERNATIVE | § | |
| FUNDING, LLC., ET AL., | § | |
|     Defendants/Movants, | § | |
| | § | |
| v. | § | |
| | § | |
| STEVEN BELLAH, | § | |
|     Respondent. | § | |

## ORDER ON DEFENDANTS/MOVANTS' MOTION TO COMPEL COMPLIANCE BY STEVEN BELLAH WITH THIRD PARTY DOCUMENT SUBPOENA

Pending before the Court is Defendants/Movants' Princeton Alternative Funding, LLC,

Microbilt Corporation, Phillip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr.

(collectively, "Movants")'s[1] Motion to Compel Compliance by Steven Bellah with Third Party

Document Subpoena ("Movants' Mot.") [doc. 1], filed March 28, 2023.  Having carefully

considered the parties' pleadings and all relevant applicable law, the Court finds Movants' motion

[doc. 1] should be **DENIED IN PART** and **GRANTED IN PART**.

### I.      BACKGROUND

Respondent Steven Bellah ("Bellah") served as the Chief Finance Officer of RDL

Realisation PLC ("RDL"), a "peer-to-peer loan fund that invested with a number of companies"

---

[1] Despite their self-styling, Princeton Alternative Funding, LLC, Microbilt Corporation, Phillip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr. are "Defendants" only in the underlying matter originating in the District Court for the District of New Jersey. In the miscellaneous matter before this Court they are "Movants" and will be referred to as such for purposes of clarity.

including, in part, Movant Princeton Alternative Funding, LLC ("PAIF").[2]  (Steven Bellah's Response to Defendants' Motion to Compel Compliance with Third-Party Document Subpoena ("Bellah Resp.") at 2-3.)  This motion arises out of a lawsuit filed by Plaintiff Securities and Exchange Commission ("SEC") against Movants in the District Court for the District of New Jersey in case number 3:21-CV-12971-ZNQ-RLS (hereinafter, "New Jersey case").  The New Jersey case stems from the SEC's allegations that Movants "solicited investors to purchase limited partnership interests in PAIF and its offshore feeder fund . . . through materially false and misleading statements."  (Movants' Mot. at 3 (internal citations omitted).)

On October 18, 2022, Movants served Bellah and Remuda with a subpoena (the "subpoena") requesting the following documents:

1. Any and all documents and/or communications from January 1, 2018 to present, by and between Ranger or RDL, its employees or representatives, regarding or relating to any representations made or actual potential investigation by SEC into Ranger, RDL or any of their affiliated entities.

2. Any and all documents and/or communications, from January 1, 2018 to present, by and between Ranger or RDL, its employees or representatives, regarding the Defendants in this action connected to the actual or potential SEC investigation by the SEC into Ranger, RDL or any of their affiliated entities.

3. Any and all documents and/or communications, from January 1, 2018 to present, by and between Ranger or RDL, its employees or representatives regarding any wrongdoing by any Defendant(s) in this action connected to the actual or potential SEC investigation by the SEC into Ranger, RDL or any of their affiliated entities.

4. Any and all documents and/or communications concerning the removal of Ranger as manager of RDL's funds.

(Movants' Mot., Ex. 1 at 41-45.)  In their motion, Movants ask the Court to Order Bellah to

---

[2] Bellah states he served as the Chief Finance Officer ("CFO") of RDL "since approximately 2019."  (Bellah Resp. at 2.)  Movants, in their motion, clarified that Bellah, at some point, left that position and is currently the founder and managing member of Remuda Advisors ("Remuda").  (Movants' Mot. at 5.)

produce responsive documents and information in compliance with the subpoena. (Movants' Mot. at 1.) Notably, at the end of their motion, Movants request the Court to exercise its authority under Federal Rule of Civil Procedure 45(f) and transfer the motion back to the District of New Jersey for resolution.[3] (*Id.* at 7.)

In his Response, Bellah argues that he "conducted numerous diligent searches for responsive documents, but did not locate anything responsive to the subpoena[]."[4] (Bellah's Resp. at 6 (emphasis omitted). Next, Bellah objects to Movants' request to transfer the pending motion to the District of New Jersey, and argues that Movants fail to plead any exceptional circumstances that warrant the motion's transfer. (*Id.* at 16.)

On May 15, 2023, the Court held a telephone conference with counsel for both Movants and Respondents. Movants were ordered to file their Reply to Movants' Motion no later than 12:00 p.m. CST May 31, 2023. The parties subsequently filed a Joint Stipulation for Extension of Time for Movants to file their Reply [doc. 7] on May 26, 2023. The Court unfiled the Joint Stipulation for various procedural deficiencies. Thereafter, Movants failed to file their Reply and the Court issued an Order to Show Cause [doc. 9] on June 29, 2023, ordering Movants to show cause, in writing, no later than July 13, 2023, as to their failure to timely and completely comply with the Court's May 15, 2023 Order. The next day, June 30, 2023, Movants filed their Reply in compliance with the Court's May 15, 2023 Order [doc. 10].

---

[3] A subpoena may command a production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45 (c)(2)(A). Movants filed this miscellaneous action seeking Bellah's compliance in the Northern District of Texas' Fort Worth Division, though Bellah and Remuda are located in Coppell, Texas, squarely within the Northern District of Texas' Dallas Division. (Movants' Mot., Ex. 1 at 41.)

[4] Bellah argues, *inter alia*, that though he is "not required to run the search terms proposed by Movants," he did run "a smaller subset of the proposed search terms" and "confirmed (again) that [he] is not in possession of documents responsive to Movants' subpoena." (*Id.* at 9, 13.)

In their Reply, Movants argue that the parties conferred after the Court's telephone conference and that Bellah "agree[d] to negotiate new proposed search terms and then conduct the additional search for potentially responsive documents." (Movants' Reply to Response of Steven Bellah to Defendants' Motion to Compel Compliance with Third Party Document Subpoena ("Movants' Reply") at 2.)  On June 16, 2023, movants provided the following additional search terms to Bellah's counsel via email:

- Burgess
- Neiterman
- NeitermanJ@sec.gov
- Privor
- PrivorB@sec.gov
- Schuster
- SchusterC@sec.gov
- Princeton Alternative
- PAF
- PAIF
- Securiteis and Exchange Commission
- SEC
- @sec.gov
- Katsiff
- Axelrod
- Hacker
- Microbilt

(*Id.* at 2-3.)  Movants acknowledge the above search terms "were broader than the specific search terms actually and previously utilized by Bellah," with the stated purpose of "supplement[ing] the prior search with (i) additional terms and (ii) similar terms that are no longer tied to the proximity [of] other terms."  (*Id.* at 3.)  Movants maintain that Bellah's counsel never responded to the additional search requests.  (*Id.*)

## II.    LEGAL STANDARDS AND DISCUSSION

### A.  Request to Transfer

The Court first addresses Movants' request to transfer the pending motion.  "Federal Rule

of Civil Procedure 45 'explicitly contemplates the use of subpoenas in relation to non-parties' and governs subpoenas served on a third party[], as well as motions to quash or modify or to compel compliance with such a subpoena." *Am. Fed'n of Musicians of the United States & Canada v. Skodam Films*, LLC, 313 F.R.D. 39, 42 (N.D. Tex. 2015) (quoting *Isenberg v. Chase Bank USA, N.A.*, 661 F. Supp. 2d 627, 629 (N.D. Tex. 2009)). The Rule provides that, "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena *consents* or if the court finds *exceptional circumstances*." Fed. R. Civ. P. 45(f) (emphasis added). "[T]he proponent of transfer bears the burden of showing that such circumstances are present." (*Id.*), advisory committee notes (2013 amendments). The Advisory Committee Notes to Rule 45 provide the following guidance as to when transfer of a subpoena-related motion is appropriate:

> The prime concern should be avoiding burdens on local nonparties subject to subpoenas, and it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions. In some circumstances, however, transfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to rise in discovery in many districts. Transfer is appropriate only if such interest outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion.

*Id.*

Bellah does not consent to transfer, and the Court therefore may only transfer the motion to compel to the issuing court (District of New Jersey) if exceptional circumstances exist. Movants' argument that the underlying litigation is "decidedly complex" and that there are several "pending motions and motions to compel that have already been decided by the [New Jersey Magistrate]" are not exceptional circumstances warranting a Rule 45(f) transfer. *See CMB Expert, LLC. v. Atteberry*, No. 3:14-mc-51-B-BN, 2014 WL 2197840, at *1 (N.D. Tex. May 27, 2014) citing *Garden City Emps. Ret. Sys. v. Psych. Sol., Inc.*, Misc. A. No. 13-238, 2014 WL 272088, at

*3 (E.D. Pa. Jan. 24, 2014) (denying transfer under Rule 45(f) because the fact that the issuing court undeniably had greater familiarity with the underlying action did not constitute an exceptional circumstance). And, while Movants assert that "all discovery-related litigation in the District of New Jersey has proceeded by Zoom and/or telephone conference" and that "no undue travel burden [would be] upon Bellah," the Court is not persuaded that litigating in New Jersey would be of minimal burden on Bellah. *In re Cobb*, No. A-20-MC-595-RP, 2020 WL 4043752 (W.D. Tex. July 16, 2020) (Rule 45 has long required that disputes related to non-party subpoenas be resolved locally "to avoid imposing undue travel or expense burdens on non-parties who are challenging a subpoena.") citing *Visionworks of Am., Inc. v. Johnson & Johnson Vision Care, Inc.*, 2017 WL 1611915, at *1-3 (W.D. Tex. Apr. 27, 2017). Accordingly, the court finds that Movants have failed to plead exceptional circumstances that support transferring their motion to the District of New Jersey. The Court therefore **DENIES** Movants' Motion to Compel [doc. 1] as relates to Movants' request to transfer.

### B. Motion to Compel

The Court next addresses Movants' request for Bellah's compliance with the subpoena. Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is *relevant* to any party's claim or defense and *proportional* to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expenses of the proposed discovery outweighs its likely benefits." Fed. R. Civ. P. 26(b)(1) (emphasis added). Pursuant to Rule 45(a), a party may issue a subpoena to command the production of documents or electronically stored information. As provided, a non-party to an action may be compelled to produce discoverable documents.

6

*Kendrick v. Heckler*, 778 F.2d 253, 254-58 (5th Cir. 1985). Rule 45 also permits a party to "move the court for the district where compliance is required for an order compelling discovery or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). The basic allocation of the burden [is] on the party resisting discovery to—in order to successfully resist a motion to compel—specifically object and show that the requested discovery does not fall within Rule 26(b)(1)'s scope of relevance or that a discovery request would impose an undue burden or expense or is otherwise objectionable." *Orchestrate HR, Inc. v. Trombetta*, 178 F. Supp. 3d 476 (N.D. Tex. Apr. 18, 2016) citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 15 Fed. R. Serv. 3d 1222,1485 (5th Cir. 1990); *Heller v. City of Dall.*, 303 F.R.D. 466,483-93 (N.D. Tex. 2014).

## 1. **Relevance**

Movants assert that Bellah, given "role with [RDL as Chief Finance Officer]," has "in his possession custody and control responsive communications and documents concerning the underlying SEC investigation, and communications" related to Movants. (Movants' Mot. at 5.) Bellah does not argue nor specifically object that the requested documents are irrelevant. The closest he comes to asserting a relevance challenge is stating that, when the Movant-provided search terms failed to render any responsive documents, Bellah was "not surprise[ed]," because "[Bellah](i) has had no involvement in any SEC investigation of Ranger, RDL or any of their affiliates, if any' and (ii) was not involved in the removal of RAM as manager of RDL's funds." (Bellah's Resp. at 9-10.) Bellah has failed to carry his burden and specifically show that Movants' requested discovery falls outside Rule 26(b)(1)'s scope of relevance. Thus, this Court finds Movants' requested discovery is relevant.

## 2. **Undue Burden**

As stated, Movants' subpoena seeks four categories of documents from Bellah. *See*, supra;

(Movants' Mot., Ex. 1 at 41.)    In an effort to aid Bellah's production, Movants provided him with
"specific search terms." (Movants' Mot. at 6.)  Movants assert that, initially after he was served
with the subpoena in October 2022, Bellah informed Movants that "there were no responsive
documents to [the subpoena's] requests." (*Id.*)  This prompted Movants to provide a specific
search term list to Bellah. (*Id.*)  Bellah then, according to Movants', "altered his position to state
that there were 'thousands or millions' of responsive documents" to Movants' request. (*Id.*)  In
his response before the Court, Bellah never asserts the subpoena caused him an undue burden,
rather, he states that the thirty-six "search terms" as provided by Movants were "problematic"
because "they would have generated a large number of hits unrelated to any SEC investigation into
Ranger, RDL, or any of their affiliates or the removal of RAM as investment manager."[5] (Bellah's
Resp. at 9 (emphasis omitted).)  Bellah seemingly attempted to mitigate any voluminious burden—
he "use[d] a subset [of ten search terms]" that "confirmed (again) that [he] is not in possession of
documents responsive to Movants' subpoena."[6]  (*Id.*)  In sum, Bellah argues he is devoid free of
anyt responsive documents and that "Movants have not shown that the [tailored] search terms
[Bellah used] were unreasonable." (*Id.* at 15.)  The Court finds Bellah has failed to lodge a specific
objection that Movants' production requests are overly broad, burdensome or oppressive. *See
McLeod*, 894 F.2d at 1485 citing *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3rd Cir. 1982).

Bellah has failed to specifically object and show that Movants' requested discovery does
not fall within Rule 26(b)(1)'s scope of relevance or that a discovery request would impose an
undue burden or expense or is otherwise objectionable.  Accordingly, Bellah fails to meet his

---

[5] Further, Bellah argues that "searches for names and email addresses of people connected with RAM []
would have generated a similar number of false positives" and that the "search terms proposed by Movants would
result in unrelated documents pertaining to RDL's day-to-day activities, investments that are wholly unrelated to
[various associated funds]." (*Id.* at 14-15.)

[6] The tailored search list revealed "several hits" that he deemed "not responsive to the subpoena." (Bellah's
Resp. at 10-11.)

burden and Movants' Motion to Compel [doc. 1] is **GRANTED** on the issue of Bellah's compliance with the subpoena.

Based on the foregoing it is **ORDERED** that Movants' Motion to Compel Compliance by Steven Bellah with Third Party Document Subpoena [doc. 1] is **DENIED IN PART** and **GRANTED IN PART**. It is **DENIED** as to Movants' request to transfer this matter to the issuing court where the underlying suit is pending. It is **GRANTED** as to the request for an Order for Bellah to comply with the subpoena.

It is further **ORDERED** that Bellah, **no later than September 1, 2023**, produce the requested documents in the subpoena as set forth above (and that have not already been produced).

SIGNED August 9, 2023.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

# **EXHIBIT 2**

Rule 72(a) Objection To

Texas Order Granting Motion to Compel

(dated August 23, 2023)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE | § | |
| COMMISSION | § | |
| | § | |
| v. | § | |
| | § | Case No. 4:23-mc-00005-P |
| PRINCETON ALTERNATIVE | § | |
| FUNDING, LLC, MICROBILT | § | |
| CORPORATION, PHILIP N. | § | |
| BURGESS, JR., WALTER | § | |
| WOJCIECHOWSKI, and | § | |
| JOHN COOK, JR. | § | |

## STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER ON DEFENDANTS/MOVANTS' MOTION TO COMPEL COMPLIANCE WITH THIRD-PARTY DOCUMENT SUBPOENA, AND BRIEF IN SUPPORT

Pursuant to Fed. R. Civ. P. 72(a), Respondent, Steve Bellah, a nonparty to the underlying litigation between Movants and the Securities and Exchange Commission, objects to the Magistrate Judge's Order on Defendants/Movants' Motion to Compel Compliance by Steven Bellah with Third-Party Document Subpoena (doc. 12), as follows:

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... ii

TABLE OF AUTHORITIES ................................................................ iii

FACTUAL AND PROCEDURAL BACKGROUND ................................................ 1

    A.    Mr. Bellah's role with RDL Realisation PLC and its investments in
Princeton .......................................................................... 1

    B.    Underlying lawsuit by the SEC against Movants. .......................... 4

    C.    Movants' subpoena to Mr. Bellah. ....................................... 4

    D.    Mr. Bellah conducted numerous diligent searches for responsive
documents, but did not locate anything responsive to the
subpoenas .......................................................................... 5

    E.    Some of Movants' search terms were problematic, but Mr. Bellah
ran a smaller subset of the proposed search terms. ..................... 7

    F.    The search confirmed (again) that Mr. Bellah is not in possession of
documents responsive to Movants' subpoena. ........................... 8

    G.    Movants maintained that Mr. Bellah must be in possession of
responsive documents, but offered no proof in support. ............... 9

    H.    At the Magistrate Judge's suggestion, the parties conferred about
additional search terms, which confirmed yet again that Mr. Bellah
is not in possession of responsive documents. ......................... 10

    I.    The Magistrate Judge's Order. ......................................... 13

ARGUMENT AND AUTHORITIES ........................................................ 13

    A.    The Magistrate Judge should have denied Movants' motion to
compel Movants did not establish that Mr. Bellah possesses
documents responsive to Movants' subpoena. .......................... 14

B.      To the extent the Magistrate Judge's Order compels Mr. Bellah to
use Movants' original proposed search terms, the Order is clearly
erroneous and contrary to law because Movants failed to
demonstrate that Mr. Bellah's prior searches were manifestly
unreasonable or that the resulting production was deficient......................17

# TABLE OF AUTHORITIES

**Cases**

*Ford Motor Co. v. Edgewood Props., Inc.,*
257 F.R.D. 418 (D.N.J. 2009) .................................................................. 14, 17, 20

*Harris v. Koenig,*
271 F.R.D. 356 (D.D.C. 2010) .................................................................. 16

*Kendle v. Whig Enterprises, LLC,*
2016 U.S. Dist. LEXIS 30266, 2016 WL 898569 (S.D. Ohio 2016) ..................................... 15

*Kleppinger v. Texas Dept. of Transportation,*
2013 U.S. Dist. LEXIS 196458, 2013 WL 12137773 (S.D. Tex. Jan. 24, 2013).................. 20

*Maker's Mark Distiller, Inc. v. Spalding Grp., Inc.,*
2021 U.S. Dist. LEXIS 98166, 2021 WL 2018880 (W.D. Ky. 2021)..................................... 15

*Margel v. E.G.L. Gem Lab Ltd.,*
2008 U.S. Dist. LEXIS 41754, 2008 WL 2224288 (S.D.N.Y. May 29, 2008)...................... 15

*Matrix Partners VIII, LLP v. Natural Resource Recover, Inc.,*
2009 WL 10677430 (E.D. Tex. June 5, 2009) ...................................................... 20

*Metcalf v. Ross,*
2021 U.S. Dist. LEXIS 77599, 2021 WL 1577799 (N.D. Ill. 2021)..................................... 15

*Mortg. Resolution Servicing v. JPMorgan Chase Bank, N.A.,*
2017 U.S. Dist. LEXIS 78217,  2017 WL 2305398 (S.D.N.Y. May 18, 2017)..................... 20

*MRM Rest. Grp., LLC v. Frontline Ins. Unlimited Co.,*
2020 U.S. Dist. LEXIS 185682, 2020 WL 5881050 (N.D. Fla. 2020) .................................. 16

*Snyder v. Fleetwood RV, Inc.,*
2016 U.S. Dist. LEXIS 10154, 2016 WL 339972 (S.D. Ohio 2016)..................................... 16

*Tijerina v. Stanley*,
    2019 U.S. Dist. LEXIS 52597, 2019 WL 1396964 (E.D. Tex. 2019) ..................................... 15

**Other Authorities**

*The Sedona Principles: Second Edition, Best Practices Recommendations & Principles for
    Addressing Electronic Document Production* (2007) .............................................................. 19

## FACTUAL AND PROCEDURAL BACKGROUND

**A.      Mr. Bellah's role with RDL Realisation PLC and its investments in Princeton.**

Since approximately February 2019, Mr. Bellah has been serving as the Chief

Finance Officer of RDL Realisation PLC ("**RDL**").  RDL, formerly known as Ranger Direct

Lending Fund PLC, is a UK-listed peer-to-peer loan fund that invested with a number of

companies, including:

- FreedomPlus, which provides consumer loans targeting emerging-prime borrowers;

- IFG, which provides loans against specific invoices rather than a credit line based upon a borrower's receivables;

- Blue Bridge, which provides equipment financing loans;

- Biz2Credit, which focuses on inventory, credit card, receivables, equipment and real-estate backed financing transactions and loans;

- Sharestates, which provides private real estate lending focusing on non-owner occupied residential and commercial projects;

- Peerform, an online lending platform that offered peer-to-peer personal loans;

- AmeriMerchant, which provides small business alternative lending through loans and merchant cash advances;

- Swift Financial, which offers cash flow recovery solutions for the fitness industry; and

- Princeton Alternative Funding, LLC ("**PAF**"), one of the movants in this case, which offered lines of credit to finance companies that offer short term loans in the non-prime and alternative market.

During the relevant time period for purposes of the underlying litigation, Ranger

Alternative Management II, LP ("**RAM**") managed RDL's investments in the US,

including its investments in the companies listed above.  RAM is an affiliate of Ranger

Capital Group, a holding company that controls a variety of registered investment

advisers offering traditional and alternative investment opportunities to institutional and

high net worth individual investors.[1]  Mr. Bellah is not, and never has been, affiliated

with RAM or Ranger Capital Group.

The underlying case involves the investments of RDL's domestic affiliate, Ranger

Specialty Income Fund, L.P., ("***Ranger Domestic***"), and an offshore affiliate, Ranger

Direct Lending Fund Trust ("***Ranger Offshore***"), in Princeton Alternative Income Fund

("***PAIF***") and Princeton Alternative Income Offshore Fund, Ltd. ("***PAIOF***"), a British

Virgin Islands company created by certain of the Movants to facilitate offshore

investments in PAIF (i.e., a feeder fund to PAIF).  PAF was formed in August 2014 to

serve as the general partner and manager of the Fund.  Mr. Bellah is not, and never has

been, affiliated with PAF, PAIF, or PAIOF and was not involved in those investment, all

of which pre-dated his time with RDL.

Between March 2015 and February 2016, RAM caused Ranger Domestic to invest

$5.75 million in PAIF as a Limited Partner, and between May 2015 and January 2016,

RAM caused Ranger Offshore to invest $55.1 million in PAIOF.  The SEC's complaint in

the underlying litigation identifies RAM as "Investor R," the largest investor in the Fund.

---

[1] https://www.rangercapital.com/

**NONPARTY STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER – PAGE 2**

On or about March 28, 2016, RAM submitted a redemption request to PAF and PAIF for a withdrawal of 100 percent of RAM's invested funds, with the funds to be received in full by October 31, 2016.

On March 9, 2018, PAF filed a voluntary petition for Chapter 11 bankruptcy protection. The Bankruptcy Court appointed a trustee in November 2018, and the Court confirmed a Chapter 11 Plan on March 31, 2020. The confirmed plan provided for the distribution of cash to RDL of only $13,483,500. Upon the effective date of the plan, all outstanding litigation related to the Princeton Fund was resolved and RDL obtained a full release of all claims against it by the Princeton Fund, its general partner, MicroBilt and its related entities, and all other investors in the Princeton Fund. The Bankruptcy Court closed the case on May 11, 2021.

PAF's bankruptcy in 2018 mortally wounded RDL's portfolio. There were wholesale Board changes in June 2018, and RDL announced that it would enter into a managed wind-down. Late in 2018, RAM resigned as investment manager with an effective date of February 2019. RAM was set to be replaced by Ares Capital Management. However, Ares withdrew over hostilities with another investor, Oaktree Capital Management. Ultimately, when RAM stepped down in or about February 2019, Mr. Bellah was appointed as the Chief Finance Officer of RDL. He and other have been working to liquidate assets and wind down RDL's investments in a manner that maximizes returns to shareholders.

**NONPARTY STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER – PAGE 3**

**B.    Underlying lawsuit by the SEC against Movants.**

According to the SEC's complaint in the underlying litigation, Movants solicited investors to buy limited partnership interests in PAIF from March 2015 through February 2017, by: (1) misrepresenting and actively concealing the role of Movant Burgess, a convicted felon, in the management of PAF; (2) making materially false statements about PAF's and Movant Microbilt's ability to monitor PAIF's investments in real time; (3) making materially false statements about the selection process for PAIF's investments; and (4) making materially false and misleading statements about PAIF's largest investor. The SEC's complaint further alleges that the Movants made false and misleading statements and omissions regarding RAM's request to redeem its investment, including failing to tell other investors that RAM, the largest investor in the Fund, had submitted a redemption request.  As Mr. Bellah was not involved with RDL prior to approximately February 2019, all of this activity necessarily took place before Mr. Bellah was involved with RDL.

**C.    Movants' subpoena to Mr. Bellah.**

On or about October 18, 2022, Movants served a document subpoena on Mr. Bellah / Remuda Credit Advisors, LLC. [2]  The Subpoena sought four broad categories of documents:

> 1.    Any and all documents and/or communications, from January 1, 2018 to present, by and between Ranger or RDL, its employees or

---

[2] Doc 1-1 at App. 000039-000045.

**NONPARTY STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER – PAGE 4**

representatives, regarding or relating to any representations made
or actual or potential investigation by the SEC into Ranger, RDL or
any of their affiliated entities.

2.      Any and all documents and/or communications, from January 1,
2018 to present, by and between Ranger or RDL, its employees or
representatives, regarding the Defendants in this action connected to
the actual or potential SEC investigation by the SEC into Ranger,
RDL or any of their affiliated entities.

3.      Any and all documents and/or communications, from January 1,
2018 to present, by and between Ranger or RDL, its employees or
representatives regarding any wrongdoing by any Defendant(s) in
this action connected to the actual or potential SEC investigation by
the SEC into Ranger, RDL or any of their affiliated entities.

4.      Any and all documents and/or communications concerning the
removal of Ranger as manager of RDL's funds.

So, in short, Requests 1, 2, and 3 seek documents regarding the SEC's investigation into

Ranger, RDL, or any of their affiliates and Request 4 seeks documents relating to the

removal of RAM as the investment manager of RDL's funds.

**D.      Mr. Bellah conducted numerous diligent searches for responsive documents,
but did not locate anything responsive to the subpoenas.**

Upon receipt of Movants' subpoenas, Mr. Bellah conducted a diligent search for

responsive documents.  He timely responded to the subpoenas on November 1, 2022,

asserted limited objections to the subpoena, and stated that no responsive items had been

located despite a diligent search.[3]

---

[3] Doc 1-1 at App. 000047.

**NONPARTY STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER – PAGE 5**

Several months later in early January 2023, Movants' counsel and the undersigned met and conferred several times, during which the undersigned consistently maintained that Mr. Bellah was not in possession of documents responsive to the subpoena. Unsatisfied with Mr. Bellah's response, Movants' counsel asked if Mr. Bellah would be willing to run searches using certain key words to attempt to locate responsive documents. Approximately two weeks later, on January 24, 2023, Movants' counsel proposed that Mr. Bellah run the following search terms to try to locate responsive documents:[4]

- RDL and/or RDL Realisation PLC
- Ranger and/or Ranger Direct Lending
- Philip Burgess
- Philip Burgess within 10 words of investigation and/or SEC
- Corey Schuster
- Brian Privor
- Nim Hacker
- Princeton
- Princeton within 10 words of investigation and/or SEC
- PAF/PAIF/PAIOF
- PAF/PAIF/PAIOF within 10 words of investigation and/or SEC
- MicroBilt within 10 words of investigation and/or SEC
- John/Jack Cook
- Walter/Walt Wojciechowski
- Jessica Neiterman
- London Stock Exchange and/or LSE
- Securities and Exchange Commission and/or SEC
- Investigation within 5 or 10 words of SEC

---

[4] Doc. 1-1 at App. 000049-000050.

**NONPARTY STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER – PAGE 6**

Movants' counsel also proposed that Mr. Bellah and Mr. Kenary search for any emails to or from the following addresses:[5]

- Philip_burgess@microbilt.com
- schusterc@sec.gov
- privorB@SEC.gov
- nhacker@rangercap.com
- jack_cook@princetonalternativefundingmgmt.com
- walt_wojciechowski@microbilt.com
- neitermanj@sec.gov

A couple of days later on January 26, 2023, Movants' counsel added the following additional terms and email addresses:[6]

- Wes McDowell
- WMcDowell@rangercap.com
- Dana Ousley
- Dousley@rangercap.com
- Timothy D. Katsiff
- KatsiffT@ballardspahr.com
- David J. Margules
- margulesd@ballardspahr.com
- David L. Axelrod
- AxelrodD@ballardspahr.com
- @ballardspahr

**E.** **Some of Movants' search terms were problematic, but Mr. Bellah ran a smaller subset of the proposed search terms.**

Several of the search terms proposed by Movants' counsel would have generated a large number of hits unrelated to any SEC investigation into Ranger, RDL, or any of their affiliates and the removal as RAM as investment manager, as is discussed more fully

---

[5] *Id.*

[6] Doc. 1-1 at App. 000052.

below.  Counsel for Mr. Bellah so advised Movants' counsel on February 7, 2023, and then

Mr. Bellah ran a search using a subset of Movants' proposed search terms as follows:[7]

- Philip Burgess
- Philip Burgess within 10 words of investigation and/or SEC
- Corey Schuster
- Brian Privor
- Princeton within 10 words of investigation and/or SEC
- PAF/PAIF/PAIOF within 10 words of investigation and/or SEC
- MicroBilt within 10 words of investigation and/or SEC
- John/Jack Cook
- Walter/Walt Wojciechowski
- Jessica Neiterman

**F.      The search confirmed (again) that Mr. Bellah is not in possession of documents responsive to Movants' subpoena.**

As before, the search confirmed again that Mr. Bellah was not in possession of any

documents responsive to Movants' subpoena.  The search performed by Mr. Bellah and

the target of a similar subpoena, Joe Kenary, who served as an Executive Director of RDL,

generated a total of seven hits.[8]  One was an email transmitting a sealed pleading from

the PAF bankruptcy case.[9]  An exhibit to the pleading was a letter from King & Spaulding

to Corey Schuster and Jessica Neiterman, who were leading the SEC's investigation of

Movants.  It was picked up by a number of the search terms used by Mr. Bellah and Mr.

---

[7] Doc. 1-1 at App. 000054-57.

[8] Mr. Kenary resides in Maryland.  Movants have filed a largely identical motion to compel against Mr. Kenary in the United States District Court for the District of Maryland.

[9] Because the letter was filed as an exhibit in the PAF bankruptcy case, Movants already have it.  Mr. Bellah's counsel has identified it to Movants' counsel by Bates number.

Kenary, but it has nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoena.

Another hit was an email strong regarding a Plan Support Agreement in the PAF bankruptcy case. Earlier emails in the string included Mr. Schuster and Ms. Neiterman as recipients. It has nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoena.

The search also picked up two sets of internal emails in which RDL's representatives circulated copies of the SEC's complaint against the Movants. The emails have nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, they are not responsive to the subpoena.

The last hit was an email from a RDL board member who was sitting on a train in Trenton, New Jersey at the time. The board member commented that sitting on a train in New Jersey brought back memories of the PAF bankruptcy. It has nothing to do with a SEC investigation into Ranger, RDL, or affiliates or the removal of Ranger as manager. Thus, it is not responsive to the subpoenas.

## G. Movants maintained that Mr. Bellah <u>must</u> be in possession of responsive documents, but offered no proof in support.

Counsel for Mr. Bellah informed Movants' counsel of the results of the search, indicating again that Mr. Bellah is not in possession of responsive documents. Unsatisfied with Mr. Bellah's response, Movants requested a status conference with Magistrate Judge Rukhsanah L. Singh of the United States District Court for the District

of New Jersey, where the underlying litigation between the SEC and Movants is pending.

After hearing from both sides, which included a discussion of the facts set forth above,

Magistrate Judge Singh recognized that she lacked authority to enforce the subpoenas

under Rules 37(a)(2) and 45(d)(3), but nevertheless advised counsel for Movants that she

would have denied the motion on the record before that Court.  For reasons unknown,

Movants continued to maintain that Mr. Bellah *must* have responsive documents in his

possession, custody, or control.  Thus, Movants filed the instant Motion to Compel.

**H.    At the Magistrate Judge's suggestion, the parties conferred about additional search terms, which confirmed yet again that Mr. Bellah is not in possession of responsive documents.**

After Mr. Bellah filed his Response to Movants' Motion to Compel, Movants

switched counsel.   Then, Magistrate Judge Cureton conducted a telephonic status

conference with the undersigned and Movants' new counsel on May 15, 2023.  During

the conference, the Magistrate Judge suggested that in light of the appearance of new

counsel, the parties should confer again to see if they could reach an agreement on

additional search terms that Mr. Bellah could use.  In the meantime, the Magistrate Judge

ordered Movants to file a Reply in support of their Motion to Compel by no later than

May 31, 2023.

Thereafter, Movants' counsel and the undersigned conferred several times,

culminating in an offer by Movants' counsel to supply the undersigned with additional

search terms for Mr. Bellah to use.  To allow time for Movants' counsel to come up with

the additional search terms, the parties filed a Joint Stipulation for Extension of Time for

Movants to file their Reply on May 26, 2023 (doc. 7), which the Magistrate Judge unfiled

due to various procedural deficiencies.

It was not until June 16, 2023, that Movants actually supplied the undersigned

counsel for Mr. Bellah with the following list of additional search terms:

- Burgess
- Neiterman
- NeitermanJ@sec.gov
- Privor
- PrivorB@sec.gov
- Schuster
- SchusterC@sec.gov
- Princeton Alternative
- PAF
- PAIF
- Securities and Exchange Commission
- SEC
- @sec.gov
- Katsiff
- Axelrod
- Hacker
- Microbilt

Movants' counsel indicated that these search terms were broader than the specific search

terms previously utilized by Mr. Bellah, with the stated purpose of supplementing the

prior search with (i) additional terms and (ii) similar terms that are no longer tied to the

proximity of other terms.

Thereafter, the Magistrate Judge issued an Order to Show Cause (doc. 9) on June

29, 2023, ordering Movants to show cause by no later than July 13, 2023, as to their failure

to timely file a Reply by May 31, 2023 (doc. 10).  Movants filed a Reply (doc. 10) the next day indicating that the undersigned counsel had not yet agreed to run the additional, broader search terms suggested by Movant's new counsel.

At the time, the undersigned was traveling extensively, including trips to Austin for work, Houston to care for the undersigned's mother at MD Anderson, and Houston again for work.  That continued after Movants filed their Reply, including trips to Odessa for work and then back to MD Anderson in Houston to care for the undersigned's mother, who passed away on July 14, 2023.

During this period, the undersigned might not have been as responsive as Movants' counsel would have liked, but the undersigned did convey Movants' additional search terms to Mr. Bellah, and Mr. Bellah conducted a search using the new terms in late June and early July.  On July 11, 2023, the undersigned advised Movants' counsel that Mr. Bellah had completed the additional search and confirmed again that he is not in possession of responsive documents.  The only new documents that were located were 75 privileged communications relating to RDL Fund Trust's proof of interest form in the Princeton bankruptcy case, which are not responsive to the subpoena because they have nothing to do with a SEC investigation into Ranger, RDL, or their affiliates or the removal of Ranger as manager.  Movants' counsel responded by email stating, "I am in receipt of your email and will consult with [co-counsel] Gerry [Krovatin] and the client."

The undersigned did not hear anything further from Movants' counsel about the subpoena until nearly a month later on August 9, 2023 – the same day the Magistrate Judge entered his Order granting Movants' Motion to Compel.

## I.      The Magistrate Judge's Order.

When the parties conferred on August 9, 2023, the undersigned reiterated that Mr. Bellah is not in possession of any responsive documents.  However, Movants' counsel stated his position that Mr. Bellah must run the search originally proposed by Movants' prior counsel in January in order to be in compliance with the Magistrate Judge's Order. However, the Magistrate Judge's Order does not explicitly state that that is what Mr. Bellah is required to do.  Rather, the Magistrate Judge found in his Order that Movants' requests sought relevant information and that Mr. Bellah failed to carry his burden to show that Movants' production requests are overly broad, burdensome, or oppressive. Doc. 12.  The Order sidesteps the issue of whether Mr. Bellah actually has responsive documents in his possession, custody, or control and, instead, orders Mr. Bellah to "comply with the subpoena" and "produce the requested documents in the subpoena as set forth above (and that have not already been produced)."  *Id*.

## ARGUMENT AND AUTHORITIES

Rule 72 (a) of the Federal Rules of Civil Procedure provides that a party may file and serve any objection to an order entered by a magistrate judge on a nondispositive matter within 14 days after being served with a copy of the order. FRCP 72(a). A

NONPARTY STEVEN BELLAH'S OBJECTION TO MAGISTRATE JUDGE'S ORDER – PAGE 13

magistrate judge's discovery order may be modified or set aside if it is "clearly erroneous or contrary to law."  *Id.*  Here, the Court should set aside the Magistrate Judge's Order because (a) Movants did not submit evidence sufficient to overcome Mr. Bellah's assertion that he does not have responsive documents in his possession, custody, or control and (b) to the extent the Magistrate Judge's Order compels Mr. Bellah to use Movants' original proposed search terms from January 2023, the Order is clearly erroneous and contrary to law.

**A.      The Magistrate Judge should have denied Movants' motion to compel Movants did not establish that Mr. Bellah possesses documents responsive to Movants' subpoena.**

First, the Magistrate Judge should have denied Movants' motion to compel because the record showed that Mr. Bellah is not in possession, custody, or control of any documents responsive to Movants' subpoena, and Movants offered no evidence to the contrary.  Movants asked the Magistrate Judge to *assume* that Mr. Bellah *must* be in possession of responsive documents given his role with RDL, but established case law holds that Movants' unsubstantiated belief was not enough to grant a motion to compel.

In granting Movants' Motion to Compel, the Magistrate Judge ignored the wealth of case law that applies to motions like the one filed by Movants.   In his Response to Movants' Motion to Compel, Mr. Bellah cited to *Ford Motor Co. v. Edgewood Props., Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2009) ("[t]he notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to

compel that would require Ford to go back to square one and begin its document collection efforts anew.") and *Margel v. E.G.L. Gem Lab Ltd.*, No. 04-1514, 2008 U.S. Dist. LEXIS 41754, at *8-*9, 2008 WL 2224288 (S.D.N.Y. May 29, 2008) ("[u]nder ordinary circumstances, a party's good faith averment that the items sought simply do not exist, or are not in his possession, custody or control, should resolve the issue of failure of production . . .").

But, the case law goes on and on. *See, e.g., Tijerina v. Stanley*, 2019 U.S. Dist. LEXIS 52597, 2019 WL 1396964, at *4 (E.D. Tex. 2019) ("... he asserts there were other medical records which would have supported all of his allegations; however, he offers nothing to suggest that any such records actually exist."); *Metcalf v. Ross*, 2021 U.S. Dist. LEXIS 77599, 2021 WL 1577799 (N.D. Ill. 2021) ("Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed. But that feeling is never enough. Courts do not accept mere speculation in a vague motion to compel.") (citing *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008)); *Maker's Mark Distiller, Inc. v. Spalding Grp., Inc.*, 2021 U.S. Dist. LEXIS 98166, 2021 WL 2018880, at *3 (W.D. Ky. 2021) ("absent credible evidence, the responding party's representation that there are no additional documents is sufficient to defeat a motion to compel."); *Kendle v. Whig Enterprises, LLC*, 2016 U.S. Dist. LEXIS 30266, 2016 WL 898569, at *4 (S.D. Ohio 2016) ("However, plaintiff may not successfully move to compel discovery on the basis of a mere suspicion that the producing party possesses

additional information that it has failed to disclose."); *Snyder v. Fleetwood RV, Inc.*, 2016 U.S. Dist. LEXIS 10154, 2016 WL 339972, at *6 (S.D. Ohio 2016) ("if a plaintiff . . . does not provide any evidence demonstrating that responsive documents do, in fact, exist and are being unlawfully withheld, the[ ] motion to compel must fail."); *Harris v. Koenig*, 271 F.R.D. 356, 370 (D.D.C. 2010) ("I cannot compel what does not exist. If plaintiffs are speculating that documents responsive to those requests do exist, there must be a reasonable deduction that that is true, and not a mere hunch."); *MRM Rest. Grp., LLC v. Frontline Ins. Unlimited Co.*, 2020 U.S. Dist. LEXIS 185682, 2020 WL 5881050, at *3 (N.D. Fla. 2020) ("[Plaintiff's] belief that [defendant] is not being forthright, no matter how well founded, is not a sufficient basis for this Court to ignore [defendant's] representation that it has produced the entire claims file.").

Here, the record showed that Mr. Bellah diligently searched his files – not once, but twice – for documents relating to the SEC's investigation into RAM, RDL, and their affiliates and documents relating to removal of RAM as manager of RDL's funds. He conducted his own search and then did an additional search using a subset of the search terms originally proposed by Movants. He was unequivocal in his repeated statements that he did not locate any documents responsive to the subpoena. Movants presented no evidence to the contrary, such as responsive, but withheld, documents that Movants obtained from another source or testimony demonstrating knowledge of the existence of responsive documents. Movants' unsubstantiated belief that documents *must* exist was

not enough to grant a motion to compel.  Thus, the Magistrate Judge should have denied Movants' motion to compel.

The Magistrate Judge's Order sidesteps this threshold issue, however.  Without addressing Mr. Bellah's steadfast protestations that he does not have any responsive documents in his possession, custody, or control, the Magistrate Judge ordered Mr. Bellah to "comply with the subpoena" and "produce the requested documents in the subpoena as set forth above (and that have not already been produced)."  At this point, it is unclear to Mr. Bellah what more he needs to do to "comply with the subpoena."  He performed a manual search for documents, which did not generate any responsive documents.  He ran a subset of Movants' originally proposed search terms, which did not generate any responsive documents.  And, he has now run a search using Movants' more recently proposed, broader search terms, which did not generate any responsive documents.

"The notion that a document production is insufficient based on a belief that documents must exist simply is not enough to grant a motion to compel . . . ."  *Ford Motor Co.*, 257 F.R.D. at 428.  Yet, that is exactly what the Magistrate Judge did here.  In doing so, the Magistrate Judge ignored the body of case law cited above.  Thus, the Magistrate Judge's Order was clearly erroneous and contrary to applicable law and should be set aside by this Court accordingly.

**B.     To the extent the Magistrate Judge's Order compels Mr. Bellah to use Movants' original proposed search terms, the Order is clearly erroneous and contrary to law because Movants failed to demonstrate that Mr. Bellah's prior searches were manifestly unreasonable or that the resulting production was deficient.**

Second, when counsel for the parties conferred on August 9, 2023, Movants' counsel argued that in order to comply with the Magistrate Judge's Order, Mr. Bellah must run all of the search terms originally proposed by Movants' prior counsel back in January. The Magistrate Judge's Order does not explicitly state that that is what Mr. Bellah is required to do. However, to the extent the Magistrate Judge's decision compels Mr. Bellah to run Movants' original search terms, the Order is clearly erroneous and contrary to law.

As a preliminary matter, contrary to what Movants' stated in their Motion to Compel, Mr. Bellah has never "altered his position to state that there were 'thousands or millions' of responsive documents" that would have been located using Movants' original search terms. (doc. 1 at p. 6). Mr. Bellah has consistent maintained that running Movants' original search terms would have resulted in a voluminous number of nonresponsive documents that would have subjected Mr. Bellah to the undue burden of having to review to confirm they are not responsive.

As examples, Mr. Bellah noted in his Response to Movants' Motion to Compel that searches for RDL, RDL Realisation PLC, Ranger, and Ranger Direct Lending would have encompassed the entirety of Mr. Bellah's relationship with the companies, including communications with the Board and third parties covering all aspects of RDL's business. Likewise, searches for names and email addresses of people connected with RAM, including Nim Hacker, Wes McDowell, and Dana Ousley, would have generated a

similar number of false positives. As would be expected during the transition of an investment manager, Mr. Bellah had many communications with representatives of RAM to learn about the 12 portfolios in which RAM had caused RDL to invest and to map out a strategy to liquidate those investments in a manner to maximize returns to RDL's investors. Mr. Bellah's communications with RAM involved not only RDL's investments in PAIF and PAIOF, but the other companies listed above as well. Thus, the search terms proposed by Movants would have resulted in unrelated documents pertaining to RDL's day-to-day activities, investments that are wholly unrelated to PAIF and PAIOF, and other unrelated information.

Other than Movants' bare allegations, there is no evidence that a more expansive search would lead to any responsive information. To the contrary, the record – including the three searches Mr. Bellah has now run -- strongly suggests that another broad search would be nothing more than a costly fishing expedition.

In any event, courts and commentators have noted that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information." The Sedona Conference, *The Sedona Principles: Second Edition, Best Practices Recommendations & Principles for Addressing Electronic Document Production*, at ii princ. 6 (2007);[10] *see also Ford*

---

[10] http://www.thesedonaconference.org. Courts in this Circuit have explained that the "Sedona Principles and the related Sedona commentaries are the leading authorities on electronic document retrieval and production." *Matrix Partners VIII, LLP v. Natural Resource Recover, Inc.*, Civil Action No. 08-547, 2009 WL

*Motor Co.*, 257 F.R.D. at 428 ("absent an agreement between the parties or a timely objection, the producing party is in the best position to determine the method by which it will collect responsive documents"). The responding party is entitled to select the search terms to be used to locate potentially responsive documents. "Unless that choice is manifestly unreasonable or the requesting party demonstrates that the resulting production is deficient, the court should play no role in dictating the design of the search, whether in choosing search tools, selecting search terms, or, as here, designating custodians." *Mortg. Resolution Servicing v. JPMorgan Chase Bank, N.A.*, No. 15 Civ. 0293 (LTS) (JCF), 2017 U.S. Dist. LEXIS 78217, at *7, 2017 WL 2305398 (S.D.N.Y. May 18, 2017).

Movants failed to show that the search terms used by Mr. Bellah were manifestly unreasonable. They did not provided the Magistrate Judge with any evidence to suggest that the additional terms Movants' former counsel originally proposed would have generated responsive documents regarding the SEC's investigation into RAM, RDL, or any of their affiliates and the removal of RAM as manager of RDL's funds. Furthermore, the "broader" search terms Movants' new counsel recently proposed likewise failed to generate any responsive hits. Thus, the Magistrate Judge should have "play[ed] no role in dictating the design of the search, whether in choosing search tools [or] selecting search terms . . . ." *Id.* To the extent the Magistrate Judge's Order can be interpreted to require

---

10677430, at *5 n. 3 (E.D. Tex. June 5, 2009); *see also Kleppinger v. Texas Dept. of Transportation*, 2013 U.S. Dist. LEXIS 196458, 2013 WL 12137773, at * 3 (S.D. Tex. Jan. 24, 2013).

Mr. Bellah to run all of the search terms originally proposed by Movants' prior counsel back in January 2023, the Magistrate Judge's Order is clearly erroneous and contrary to established law.  The Court should set aside the Magistrate Judge's Order accordingly.

WHEREFORE, PREMISES CONSIDERED, Mr. Bellah respectfully requests this Court to set aside or modify the Magistrate Judge's Order and grant Mr. Bellah such other and further relief to which he may be justly entitled.

Dated: August 23, 2023.

Respectfully submitted,

*/s/ Brian Vanderwoude*
J. Brian Vanderwoude
Texas Bar No. 24047558
**DORSEY & WHITNEY LLP**
200 Crescent Court, Suite 1600
Dallas, Texas 75201
(214) 981-9900 Phone
(214) 981-9901 Facsimile
vanderwoude.brian@dorsey.com

**ATTORNEY FOR NONPARTY
STEVEN BELLAH**

## CERTIFICATE OF CONFERENCE

I hereby certify that I have conferred with Movants' counsel regarding the relief sought in this motion.  Counsel for the parties have agreed to continue to discuss a workable solution that would resolve both this instant matter and related litigation against Mr. Bellah's business partner, Mr. Kenary, in Maryland.  To date, counsel have not resolved this dispute.  Given the 14-day deadline to object to a magistrate judge's decision, it is presented to the Court for determination while counsel continue their discussions.

/s/ Brian Vanderwoude

J. Brian Vanderwoude

## CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, I electronically filed the foregoing document using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ Brian Vanderwoude

J. Brian Vanderwoude

# **EXHIBIT 3**

Movants' Response to

Rule 72(a) Objection To

Texas Order Granting Motion to Compel

(dated September 7, 2023)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : | Civil Action No. 4:23-mc-00005-JLC |
| | : | |
| | : | Judge Hon. Jeffrey L. Cureton |
| Plaintiff, | : | |
| | : | |
| v. | : | Case in other Federal Court: |
| | : | |
| PRINCETON ALTERNATIVE FUNDING, LLC, MICROBILT CORPORATION, PHILIP N. BURGESS, WALTER WOJCIECHOWSKI, and JOHN COOK, JR., | : | District of New Jersey |
| | : | 3:21-cv-12971-ZNQ-RL |
| | : | |
| | : | |
| | : | |
| Movants. | : | |

**MOVANTS' RESPONSE TO STEVEN BELLAH'S
OBJECTION TO MAGISTRATE JUDGE'S ORDER ON
DEFENDANTS/MOVANTS' MOTION TO COMPEL COMPLIANCE
<u>WITH THIRD-PARTY DOCUMENT SUBPOENA, AND BRIEF IN SUPPORT</u>**

Movants Princeton Alternative Funding, LLC, MicroBilt Corporation, Philip N. Burgess, Jr., Walter Wojciechowski, and John Cook, Jr. ("<u>Movants</u>"), through their undersigned counsel, file this brief Response to Steven Bellah's Objection to Magistrate Judge's Order on Defendants/Movants' Motion To Compel Compliance With Third-Party Document Subpoena, and Brief In Support (the "<u>Objection</u>") (ECF No. 13). For the reasons set forth herein, Movants respectfully request that this Court affirm the Magistrate Judge's Order (the "<u>Order</u>") (ECF No. 12) compelling compliance with the subpoena in the manner and scope as set forth in the Order.

**A. <u>Brief Background</u>**

The Order provides an accurate background regarding this discovery dispute which unfortunately is continuing due to the delaying resistance of Steven Bellah ("<u>Bellah</u>") to comply with the subpoena and perform an adequate search for the information requested. There have been numerous efforts between counsel for the parties to resolve this miscellaneous discovery dispute and, although Bellah has performed certain limited searches, his searches have remained

inadequate and unacceptable given the limitations inherent in the search terms. As a result of the

issuance of the Order which compelled Bellah's compliance consistent with the "the thirty-six

'search terms'" referenced therein and identified in prior filings (the "<u>36 Search Terms</u>"),[1]

Movants' counsel attempted again to negotiate a compromised search that was limited not only to

necessary terms but that also recognized and omitted search terms that Bellah's counsel asserted

would be problematic. Specifically, and most recently, as of August 30, 2023, counsel for the

parties had discussed the following "final" search criteria and production (the "<u>Final Search

Terms</u>") in *lieu* of further litigation regarding the Order and Objection:

- PAIOF (without any proximity to "investigation" or "SEC");
- @ballardspahr.com email addresses coupled with a proximity
  connector of w/50 to the following additional search terms:
  - Princeton
  - Investigation
  - Phil
  - Philip
  - Walt
  - Walter
  - Wojciechowski
  - Jack
  - Cook
  - Howard
  - Davner
- Production of those documents that were identified in the Rule 72(a)
  Objections (ECF No. 13) but were asserted to be unresponsive to the
  subpoena.

**<u>Exhibit A</u>** (email, dated August 30, 2023). The August 30 email from Movants' counsel further

recognized and gave credit to Bellah's concern for search terms that might in fact generate a large

number of unresponsive hits (*e.g.*, @rangercap.com email addresses were excluded).

Movants have advised Bellah's counsel that these Final Search Terms (including the

related production of the non-responsive documents as defined by Bellah) are acceptable to resolve

---

[1] The 36 Search Terms are set forth in the Objection at pages 6-7. *See* Objection, ECF No. 13 at PageID 144-145.

this matter as well as sufficient to similarly resolve the parallel litigation involving Bellah's colleague, Joseph Kenary, currently venued in the District of Maryland (the "<u>Kenary Matter</u>"). *See* Objection, at n.8 (ECF No. 13). As with prior opportunities, the current efforts to resolve both Bellah's Objection and the Kenary Matter have been met with delay and non-responsiveness from Bellah. As of the date of this filing, a week has passed and there is still no formal response to the offer of the Final Search Terms (as an alternative to and compromise of the 36 Search Terms). Movants can only interpret this delay and avoidance as a strategic ploy by Bellah to appear reasonable while waiting and hoping for a reversal of the Order. However, as set forth below, this Court should respectfully not reverse the Order but rather affirm it and order that Bellah comply with the subpoena by performing a search consistent with the 36 Search Terms (which the Order deemed to be both relevant and not burdensome).

### B. The Order Compelling Compliance Was Properly Founded Upon Bellah's Failure To Object And Demonstrate That Discovery Would Impose An Undue Burden.

The Magistrate Judge's Order was founded upon a proper and thorough review of the parties' respective filings and representations as to the multiple efforts to resolve this discovery dispute.[2] The Order rightly determined that, with regard to the 36 Search Terms Movants had provided to Bellah, Bellah had failed to "specifically object and show that Movants' requested discovery would impose an undue burden or expense or is otherwise objectionable." Order at 8. The Order further ruled that Bellah had "failed to lodge a specific objection that Movants' production requests [*i.e.*, the 36 Search Term] are overly broad, burdensome or oppressive." These findings are within the discretion of the Magistrate Judge to rule and are not clearly erroneous and should be affirmed as such.

---

[2] There was a portion of the Order that concerned Movants' motion to compel a transfer which the Magistrate Judge denied and to which neither party objects.

The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable. *See McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). A party resisting discovery must show how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See Merrill v. Waffle House, Inc.*, 227 F.R.D. 475, 477 (N.D. Tex. 2005); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."). "Failing to do so, as a general matter, makes such an unsupported objection nothing more than unsustainable boilerplate." *Heller*, 303 F.R.D. at 490.

Moreover, the District Court in *Nerium SkinCare, Inc. v. Nerium Int'l, LLC*, No. 3:16-CV-1217-B, 2017 WL 9934881 (N.D. Tex. Feb. 6, 2017), set forth the proper standard when reviewing a Rule 72(a) objection:

> Federal Rule of Civil Procedure 72(a) provides that a "district judge ... must consider timely objections" to a magistrate judge's order on a non-dispositive matter "and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).
>
> Rule 72(a)'s "'clearly erroneous' standard applies to the factual components of the magistrate judge's decision." *Lahr v. Fulbright & Jaworski, L.L.P.*, 164 F.R.D. 204, 208 (N.D. Tex. 1996) (quoting *Smith v. Smith*, 154 F.R.D. 661, 665 (N.D. Tex. 1994)). The "contrary to law" language, on the other hand, refers to the magistrate's legal conclusions, which are "reviewable de novo, and the district judge reverses if the magistrate judge erred in some respect in [his] legal conclusions." *Arters v. Univision Radio Broad. TX, L.P.*, No. 3:07-CV-0957-D, 2009 WL 1313285, at *2 (N.D. Tex. May 12, 2009) (alteration in original) (internal quotation marks omitted) (quoting *Lahr*, 164 F.R.D at 208). An "abuse of discretion standard governs review of 'that vast area of choice that remains to the [magistrate judge] who has properly applied the law to the fact findings that are not clearly erroneous.'" *Id.* (alteration in original) (quoting *Lahr*, 164 F.R.D. at 208). Overall, Rule 72(a)'s framework for review is "highly deferential." *Blue v. Hill*, No 3:10-CV-2269-L, 2014 WL 2217334, at *2 (N.D. Tex. May 29, 2014).

> And when discovery matters are involved, as here, the objecting party's burden
> is especially "heavy." *Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-
> G, 2010 WL 791421, at *4 (N.D. Tex. Mar. 8, 2010).

*Id.* at *1.

The Magistrate Judge's finding that Bellah had not met his discovery burdens to demonstrate that the 36 Search Terms were irrelevant or burdensome is given preference and should not be disturbed by this Court, as Bellah has not established that the Order is clearly erroneous or contrary to law. Notably, Bellah's Response to the Motion to Compel failed to include a supporting affidavit and thus the Court was compelled to rule that Bellah had failed in sustaining his burden. *S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("A party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.").

Moreover, Bellah has asserted that he does not have any responsive documents and cites decisions that support his straw argument that he cannot be compelled to produce something he does not have. And yet Bellah has only run those limited searches that are less than the 36 Search Terms that the Magistrate Judge has found to be acceptable, not burdensome and relevant to the subpoena. For this additional reason, the Order is not clearly erroneous and Bellah's Objection is therefore not entitled to relief in the absence of the searches actually being performed and the results being shared.

### C. Conclusion

For the above reasons, Movants respectfully request that this Court affirm the Order compelling Bellah to comply with the Order and produce those documents generated by the completion of the 36 Search Terms as referenced in the Order, and (ii) to produce within 20 days of such affirming order all responsive documents subject only to redaction consistent with standard privileges.

Movants,
By Their Attorney,

*/s/ Bradley Purcell*

_____
Bradley Purcell, Esquire
Texas Bar No. 24063965
**REED SMITH LLP**
2850 N. Harwood, Suite 1500
Dallas, TX 75201
bpurcell@reedsmith.com

Dated: September 7, 2023

# EXHIBIT A

**From:** Gerard McCabe
**Sent:** Wednesday, August 30, 2023 5:04 PM
**To:** vanderwoude.brian@dorsey.com
**Cc:** gkrovatin@krovatin.com
**Subject:** RE: Kenary - Draft Status Report (due for filing 8/14/23)

Brian –

Thanks for the call today.

As discussed, before we prepare and file a response to the Rule 72(a) objections, we both agreed that it would be worthwhile to determine if there is common ground as to final potential searches.

First, regarding the concept of depositions, you acknowledge that, if we were to subpoenas for depositions, you would accept service of the subpoena and produce your client without waiver of your rights to assert any objections to that subpoena.

Second, it is apparent to you that there are certain search terms that would generate too large of a response, but yet there are other terms that your clients may be amenable to searching. Specifically, from our discussion, I think the following search terms might be acceptable to your clients without waiver of any legal position for either party in any of the current or prospective filings:

- PAIOF (without any proximity to investigation or SEC);
- @ballardspahr.com email addresses coupled with a proximity connector of w/50 to the following additional search terms:
    - Princeton
    - Investigation
    - Phil
    - Philip
    - Walt
    - Walter
    - Wojciechowski
    - Jack
    - Cook
    - Howard
    - Davner
    - n.b. – these additional proximity terms have not been utilized as "solo" terms in the prior searches.
- production of those documents that were identified in the Rule 72(a) Objections (ECF No. 13) but were asserted to be unresponsive to the subpoena.

You believed that using the @rangercap.com email addresses as search terms would produce an overwhelmingly large and unmanageable response.

Let me know if the above is accurate from today's discussion and is a valid starting point, and, if so, we will speak with our clients to confirm whether the above is acceptable or whether there are revisions to consider.

Even if we accept the above as accurate, we each nevertheless reserve the right to modify the potential new search terms after speaking with our clients.

I would like to try to reach an agreement if possible by Friday afternoon or sooner.

Thank you.

Gerard M. McCabe, Esquire
**McCABE.LAW GROUP, LLC**
(215) 965-0004 (Direct)
(215) 965-0013 (Fax)
(267) 970-2526 (Cell & Text)
gmccabe@mccabe.law

**CONFIDENTIAL AND PRIVILEGED COMMUNICATION**: Intended only for the addressee(s) and may be privileged, confidential and exempt from disclosure under applicable law. Dissemination, distribution or copying by anyone other than the addressee or the addressee's agent is strictly prohibited. If this electronic mail transmission is received in error, please notify us immediately by reply e-mail or telephone and destroy the original transmission and attachments.

**IRS CIRCULAR 230 DISCLOSURE**: Pursuant to Treasury Regulation, any tax advice contained in this communication (including any attachments) is not intended or written to be used and cannot be used or relied upon by you or any other person, for the purpose of (i) avoiding penalties under the Internal Revenue Code, or (ii) promoting, marketing or recommending to another party any tax advice addressed herein.

## <u>CERTIFICATE OF SERVICE</u>

I, Bradley Purcell, hereby certify that, on September 7, 2023, I electronically filed the foregoing Response to Bellah's Objection using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Bradley Purcell*

_____

Bradley Purcell, Esquire

## <u>CERTIFICATE OF SERVICE</u>

I, Jeffrey S. Jacobovitz, Esquire, hereby certify that, on September 11, 2023, I electronically filed the foregoing Joint Status Report using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jeffrey S. Jacobovitz*
Jeffrey S. Jacobovitz, Esquire
